UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 04-10076-RGS |
| ) | |
| CASSANDRA BEATTY ) | |

DEFENDANT'S SENTENCING MEMORANDUM

Introduction

Defendant, Cassandra Beatty, has pled guilty to a two-count superseding indictment charging her with conspiracy to import cocaine, and importation of cocaine. Though she herself imported 492.6 grams, defendant acknowledges that she is liable, under U.S.S.G. § 1B1.3, for the cocaine that her co-defendant, Terrance Davis, imported (653.5 grams). Defendant thus withdraws her objection to the presentence report's calculation of the drug weight (defendant's objection #1). Since more than 500 grams of cocaine are attributable to defendant, the five-year minimum mandatory set forth at 21 U.S.C. § 841(b)(1)(B) applies. Defendant is not safety valve eligible.

Defendant's still presses her objection to the 2-level role enhancement levied by the probation department. A properly contextual view of defendant's actions reveals that she should receive no role adjustment. (Defendant withdraws her objection #3, seeking a role reduction).

If the Court does not impose a role enhancement, defendant's guideline sentencing range is 70-87 months.[1]

Defendant recommends that the Court impose the minimum mandatory 60-month sentence. The Court may reach that result in either of two equally sustainable ways. From the applicable guideline sentencing range, the Court may depart downward one or more criminal history categories on the basis that defendant's Criminal History Category substantially over-represents the seriousness of her criminal history and her likelihood of recidivism (U.S.S.G. § 4A1.3).

Alternatively, this case presents a number of 18 U.S.C. § 3553(a) factors which militate in favor of the 60-month minimum mandatory sentence.

Defendant submits this memorandum in support of her sentencing recommendation.

## Background

Cassandra Beatty is a single mother of a 15 year old son, London. London is currently living with Cassandra's 74 year old father at the family home in Columbus, Ohio. Cassandra's remaining family consists of her brother, who suffers from serious health problems.

On December 2, 2003, Cassandra, along with her co-defendant Terrance Davis, flew from Jamaica to Boston. Davis is London's father and Cassandra's long-time friend. At Logan

---

[1] The guideline calculation is as follows:

```
26    U.S.S.G. § 2D1.1(c)(7) (base offense level, between 500 g and 2 kg of cocaine)
-3    U.S.S.G. § 3E1.1 (acceptance of responsibility)
23
```

Defendant is in CHC IV, which yields a 70-87 month sentencing range.

airport, Customs officials were suspicious of Cassandra and Davis, questioned them, and requested that they consent to x-rays. The pair did consent, and the x-rays revealed pellets which were subsequently found to contain cocaine.

Cassandra immediately cooperated with the Customs agents in an attempt to complete a controlled delivery of the cocaine. Under the agents' supervision, and while she was still at the hospital, Cassandra called the cocaine supplier in Jamaica. She told him, as instructed, that she had cleared Customs and was registered at a particular Boston hotel.

Unfortunately, the supplier called the hotel before the agents let the hotel desk clerk in on the ruse. The desk clerk informed the supplier that Cassandra was not registered there. The supplier knew then that Cassandra had been arrested. The opportunity to effect a controlled delivery was thus foreclosed. Since Cassandra's cooperation did not lead to the prosecution of another, and though that was through no fault of her own, the government has declined to file a motion under U.S.S.G. § 5K1.1 or 18 U.S.C. § 3553(e).

ARGUMENT

I.   <u>Defendant should receive no adjustment for her role in the offense</u>.

The probation department has imposed a 2-level role enhancement pursuant to U.S.S.G. § 3B1.1(c) on the basis that defendant recruited Davis to accompany her. The application of the enhancement, in the context of this case, yields a harshly unfair result.

In <u>United States v. Jurado-Lopez</u>, 338 F.Supp.2d 246, 252 (D.Mass. 2004), Judge Gertner aptly described the relative role of drug couriers in the narcotics trade by recognizing that they

3

are at "the bottom of the hierarchy." This is particularly true of body smugglers:

> Individuals willing to swallow pellets of [narcotics], or insert them in their rectum, could not be any lower. These people are not just couriers, they are body couriers. If the [narcotics] were to leak out of the pellets, their lives could be in danger.

Id.

An important part of the court's analysis in Jurado-Lopez was its recognition that in assessing role adjustments in courier cases, a court should look not only to the indicted couriers, but to non-indicted participants in the broader importation scheme as well. United States v. Jurado-Lopez, 338 F.Supp.2d at 252. See also U.S.S.G. § 3B1.1, comment. (n.1)("A participant is a person who is criminally responsible for the commission of the offense, but need not have been convicted."). Here, as in Jurado-Lopez, defendant is certainly less culpable than the individual who supplied the cocaine or those for whom it was ultimately destined.[2] Id. By assessing defendant a role enhancement, the probation department ignores the larger picture to which the court in Jurado-Lopez properly alludes, and the fact that defendant, and Davis, were relatively powerless pawns in a larger criminal enterprise.

---

[2] Defendant is aware of the Court's opinion in Charles v. United States, Civil No. 02-12312-RGS (May 20, 2003). Defendant respectfully submits that, though couriers play an indispensable role in the narcotics trade, they are less culpable than those who distribute the narcotics on the street. Those distributors stand to make huge profits from the sale of the drugs. Couriers, by contrast, are paid a one-time fee which is comparatively nominal. The fee paid to body smugglers, especially, is a mere pittance compared to the extraordinary bodily risks they take.

Defendant freely concedes that she introduced Davis to the source of cocaine in Jamaica. That fact alone, however, is insufficient to support a role enhancement.³ Davis joined defendant on this trip of his own free will. The record is bereft of any evidence whatsoever that defendant exercised control over Davis.

The record does reveal that, though defendant exercised no control over Davis, both defendant and Davis were both closely managed and supervised by others. Neither of them had any discretion or decision-making authority. They had no control over the trip's itinerary. (Defendant was originally told that she would be sent to Orlando, but then was given a ticket to Boston. At one point she was booked to fly into New York, but she was never made aware of that fact). Nor did they have control over the delivery of the cocaine in Boston. (They were given specific instructions that when they landed at Logan, they were to look for a vehicle from "Knight's Limousine Service." The driver would take them to a woman who would accept the drugs).

Since defendant and Davis were equally culpable, and both less culpable than other participants who remain uncharged, no upper role adjustment is warranted.

---

³ In assessing defendant a role enhancement, the probation department mentions that defendant had made a prior trip. No one contends, nor can they, that the prior trip was related in any way to the offense charged in this case. That defendant made a prior trip is thus irrelevant to the role analysis. See United States v. Antico, 275 F.3d 245, 270 (3rd Cir. 2001)("The language of § 3B1.1 requires the court to consider the defendant's leadership role with respect to the offense charged.").

II. This Court should depart downward on the well-recognized basis that defendant's Criminal History Category substantially over-represents the seriousness of her criminal history and her likelihood of recidivism (U.S.S.G. § 4A1.3).

Defendant is in Criminal History Category IV on the basis of the following prior offenses:

1. a misdemeanor attempted assault that dates to 1994 (2 criminal history points, see PSR at ¶ 37);

2. leaving the scene of an accident (2 criminal history points, see PSR at ¶ 39);

3. failure to produce a driver's license (1 criminal history point, see PSR at ¶ 40); and

4. attempted forgery (3 criminal history points, 2 of which are based on the fact that defendant was one month shy of finishing her probation on the offense when the federal offense was committed, see PSR at ¶¶ 42, 44).

Defendant's record is atypical for someone in Criminal History Category IV, which usually connotes a serious prior record with significant sentences of incarceration. Particularly where 3 of her criminal history points derive from driving offenses, and where defendant has never served more than a 90-day sentence, CHC IV overstates the seriousness of her prior record.

Criminal History Category IV overstates defendant's likelihood of recidivism as well. Defendant has never faced a case as serious as the instant one. She has a profound appreciation for the gravity of this matter. She will serve a lengthy period of incarceration here regardless of the sentence the Court imposes. She will seek a recommendation from the Court to the Bureau of Prisons 500 Hours program, and she will likely be admitted to and successful in the program. She will be on a lengthy period of Supervised Release once her incarceration is over. Given the foregoing, it is unlikely that defendant will re-offend. Criminal History Category IV consequently overstates defendant's likelihood of recidivism.

III.   In any event, the 60-month minimum mandatory sentence is a reasonable one under 18 U.S.C. § 3553(a).

Under 18 U.S.C. § 3553(a)(1), a Court should consider the "history and characteristics of the defendant" in fashioning a reasonable sentence.  Here, the Court should consider the fact that defendant is a single mother with a 15 year old boy at home.  In his mother's absence, London is having a very difficult time.  See PSR at ¶ 52.  Though defendant will still have a considerable amount of time left to serve, if the Court imposes a 60-month sentence defendant will be able to return to her child before he is fully grown.  Further, upon her release defendant will be a caretaker for her father, who is 74 and in declining health, and her brother, who has high blood pressure, has suffered two strokes, is blind, and has had a kidney transplant.  Defendant loves her family very much -- her motivation for this offense was to obtain Christmas money -- and she is grief-stricken by her separation from them.

Defendant's own health is also a significant concern.  She has a precancerous lesion on her cervix.  She also has masses in the region of her uterus which may require surgical intervention.  Though defendant is receiving treatment, the past 18 months at MCI-Framingham have not been easy for her.

Finally, the Court should consider defendant's efforts at cooperation.  Though those efforts were unsuccessful, that was no fault of defendant's, and her willingness to cooperate speaks to her character.

Under 18 U.S.C. § 3553(a)(2)(D), the Court should consider the need for the sentence imposed "to provide the defendant with needed . . . correctional treatment[.]"  Defendant is requesting that the Court recommend she be placed in the Bureau of Prisons 500 Hours drug

treatment program. A 60-month sentence will afford her the opportunity to complete that program; no longer sentence is necessary.

A 60-month sentence is certainly lengthy enough to protect the public from any further crimes of defendant (18 U.S.C. § 3553(a)(2)(C)), and it sufficiently serves the concern of general deterrence as well (18 U.S.C. § 3553(a)(2)(B)).

In short, a 60-month sentence is "sufficient, but not greater than necessary" to achieve the aims of sentencing. 18 U.S.C. § 3553(a).

<u>Conclusion</u>.

For the foregoing reasons, defendant recommends this Court impose a sentence of 60 months incarceration, with a judicial recommendation that the sentence be served at FPC Alderson, and a recommendation that defendant be placed in the 500 Hours drug treatment program.

                          CASSANDRA BEATTY
                          By her attorney,

                          /s/ J. Martin Richey
                          J. Martin Richey
                            B.B.O. #559902
                          Federal Defender Office
                          408 Atlantic Avenue, 3rd Floor
                          Boston, MA  02110
                          Tel: 617-223-8061

July 22, 2005